# *** EMERGENCY MOTION-COVID-19 INFECTION ***

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Criminal Docket No.: 93-CR-123-UU-4

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

BYRON WALKER,

    Defendant.
_____/

FILED BY _____ D.C.

DEC 1 6 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## DEFENDANT'S *PRO SE* EMRGENCY MOTION FOR COMPASSIONATE RELEASE, AND AUTHORITY IN SUPPORT THEREOF, PURSUANT TO 18 U.S.C. 3582(c)(1)(A)

**NOW COMES,** Defendant BYRON WALKER, appearing pro se, and respectfully submits this Emergency Motion for Compassionate Release, pursuant to 18 U.S.C. 3582(c)(1)(A)(i), and for the appointment of CJA counsel, pursuant to 18 U.S.C. 3006A(a)(2)(B). In support of this motion, Defendant would show the Court the following:

### I. BACKGROUND.

On November 4, 1994 Defendant was convicted after a jury trial of conspiracy to possess with intent to distribute cocaine and "use" a firearm during and in relation to that offense, and possession of an unregistered firearm. Defendant was initially sentenced to 624 months imprisonment (360 months attributed to a consecutive sentence on the "use" of a machinegun count). That sentence was reduced on May 14, 2015, to 572 months due to a change in the Guidelines.

Defendant unsuccessfully appealed the judgment, and subsequently sought review in the U.S. Supreme Court, which was equally unsuccessful. The conviction became final in October 2000. Defendant subsequently motioned the Court to vacate his conviction and sentence under 28 U.S.C. 2255. Those efforts also proved unsuccessful. Defendant is 55 years old and has uncontrolled high blood pressure. He is serving his sentence at the Federal Correction Institution in Fort Dix, New Jersey ("FCI Fort Dix"), where **Defendant has contracted the deadly coronavirus.**

Defendant has a tentative release date of November 28, 2033. He now moves for compassionate release on the ground that he, by virtue of nothing less than neglect on the part of the Federal Bureau of Prisons, has contracted the deadly coronavirus, and his current health and the conditions of confinement place him at risk of perishing from the infection.

## II. STATEMENT OF RELEVANT FACTS.

Recently the Federal Bureau of Prisons transferred scores of inmates into FCI Fort Dix (where positive COVID cases were virtually non-existent) from FCI Elkton (a facility ravaged by the deadly disease). That administrative decision was both irresponsible and risky. As could be expected from the knowing introduction of the virus into FCI Fort Dix, hundreds of inmates and staff have now been infected, and there is an uncontrolled outbreak at the institution. Notably, the Bureau of Prisons has failed/refused to test thousands of other inmates at the institution – further promoting the spread of the deadly disease amongst inmates and staff. The crisis at FCI Fort Dix has garnered the attention of many, including Congress. See, **Attachment A.**

At least 439 inmates have been exposed to, and infected with, the virus (including Defendant) by being held in close proximity to infected inmates. Even staff have been infected.

Given the coronavirus outbreak at FCI Fort Dix, and the Bureau of Prisons' inability to stem the spread of the virus, immediate action is both appropriate and warranted by the Court. Such action could very well save at least one life -- this Defendant's.

### III.    ARGUMENTS.

<u>POINT ONE</u>

**DEFENDANT'S SENTENCE SHOULD BE MODIFIED SINCE HE IS NOW INFECTED WITH THE CORONAVIRUS AS A DIRECT RESULT OF THE BUREAU IF PRISONS' NEGLIGENCE AND DELIBERATE INDIFFERENCE, PRESENTING EXTRAORDINARY AND COMPELLING REASONS FOR REDUCING THE TERM OF IMPRISONMENT**

As a preliminary matter, it should be noted that a sentencing court does not have inherent authority to modify an otherwise valid sentence. United States v. Washington, 584 F.3d 693, 700 (6th Cir. 2009). The authority to resentence a defendant is limited by statute. United States v. Houston, 529 F.3d 743, 748-49 (6th Cir. 2008); United States v. Ross, 245 F.3d 577, 585 (6th Cir. 2001). 18 U.S.C. 3582(c)(1)(A) allows a court to modify a term of imprisonment where "extraordinary and compelling reasons warrant [modification]." Motions under that section are typically referred to as "motions for compassionate release." United States v. McMann, No. 13-CR-52, 2020 WL 1901089, at *1 (E.D. Ky. Apr. 17, 2020). "The compassionate release provisions were . . . intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" United States v. Ebbers, No. 02-CR-1144, 2020 WL 91399, at *6 (S.D.N.Y. Jan. 8, 2020). Congress amended the compassionate release statute for the purpose of increasing the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5194, 5239; see also, Ebbers, 2020 WL 91399, at *7. Section 3582(c)(1)(A)(i) requires defendant, first, to exhaust his available administrative remedies by

initially requesting relief from the Warden of his facility. 18 U.S.C. 3582(c)(1)(A)(i). <u>United States v Koch</u>, No. 01-CR-083, 2019 WL 3837727, at. *1-2 (E.D. Ky. Aug. 14, 2019).

The amended compassionate release statute allows a defendant to seek relief directly from the court if more than thirty days lapse from the time he seeks relief from his warden. <u>See</u>, <u>York</u>, 2020 WL 3241166, at *5 (E.D. Tenn. July 18, 2019). To this end, Defendant notes that on October 29, 2020, he requested that the Warden move this Court for a modification of Defendant's sentence based on the imminent threat of death or serious bodily injury posed by COVID-19, the outbreak at FCI Fort Dix, and Defendant's present health conditions. <u>See</u>, **Attachment B.** As of the date of this motion, Defendant has received no response from the Warden.

Since Defendant has contracted the deadly virus, and is likely to suffer considerably as a result thereof, there are extraordinary and compelling reasons for reducing his sentence to time-served that did not exist at the time of the original sentencing. Also a point of consideration is the fact that the Bureau of Prisons – the agency entrusted with the responsibility and obligation of providing Defendant "suitable quarters," "safekeeping," "protection," and "care" (see, 18 U.S.C. 4042(a)(2) and (3)) – is solely responsible for Defendant having contracted the deadly virus.

It is indisputable that the Bureau of Prisons' reckless disregard for human life, and practice of introducing the virus into FCI Fort Dix through the transfer of hundreds of inmates from a facility that was plagued by the virus, caused Defendant's present physical injury. The long-term effects of this disease remain unknown, given the novel nature of the deadly disease.

Given the undeniable circumstances surrounding Defendant's condition, and the condition of his confinement which, at a minimum, prevents Defendant from practicing social distancing and requires Defendant to remain in close proximity to scores of other inmates who have tested positive for the coronavirus – further compromising the recovery process, and reducing the likelihood of a full recovery (thereby increasing the likelihood of fatality) -- compassionate release is warranted. Consequently, an order reducing Defendant's sentence to time-served should issue forthwith in the interest of justice and humanity. A decision not to grant compassionate release in this case is almost certain to work a complete miscarriage of justice given the substantial likelihood of death or serious bodily injury.

### POINT TWO

**DEFENDANT'S 30 YEAR SENTENCE IMPOSED UPON HIS CONVICTION FOR "USE" OF A MACHINEGUN, THAT WAS NEVER "ACTIVELY EMPLOYED," AS REQUIRED BY THE U.S. SUPREME COURT HOLDING IN *BAILEY v. UNITED STATES, 516 U.S. 137 (1995)*, MUST BE MODIFIED, AS HIS "ACTUAL INNOCENCE" PRESENTS BOTH EXTRAORDINARY AND COMPELLING REASON WARRANTING REDUCTION OF THE TERM OF IMPRISONMENT**

As this Court has acknowledged, Defendant was "convicted of . . . *use of a firearm* during a drug trafficking crime…" **Order of Dismissal, at 1 (July 13, 2020)(Doc. No. 639).** The facts underlying the offense of conviction are straightforward and simple: In February 1993, federal agents began investigating cocaine-trafficking activities. That investigation led to information that Defendant and others planned to rob a shipment of drugs arriving from the Bahamas. However, immediately prior to the robbery, Defendant's were arrested. Thus, thwarting even the attempt to commit the robbery. At no time was the firearms that were recovered "actively employed" or displayed. Nevertheless, a Grand Jury indicted Defendant's for using the firearms, and the jury convicted them of same.

After the trial, the U.S. Supreme Court decided *Bailey v. United States*, **516 U.S. 137 (1995)**, wherein the Supreme Court held that "use" under 18 U.S.C. 924(c)(1)(A) requires the active employment of the firearm during and in relation to the predicate drug trafficking crime or crime of violence. There was no such "active employment" in this case, and Defendant is "actually innocent" of the Section 924(c)(1)(A) violation, for which he received a draconian 30 year sentence of imprisonment – which he is presently serving. His actual innocence, however, presents both an extraordinary and compelling reason for modifying his sentence. *See, e.g., United States v. Brooker, 976 F.3d 228, 234-36 (2d Cir. 2020)(holding that a district court is free to find that any reasons are "extraordinary and compelling" for compassionate release purposes).* Thus, the Court should modify the sentence in this case, and order Defendant's immediate release.

### IV.   CONCLUSION.

Defendant, having demonstrated that there are extraordinary and compelling reason for modifying the sentence imposed by this Court, an order granting this motion should issue forthwith.

**WHEREFORE,** Defendant prays that this Court will issue an order (1) releasing him on bail pending the final disposition of his motion for compassionate release, (2) appointing counsel, and (3) granting his motion for compassionate release.

Dated: Fort Dix, New Jersey
December 2, 2020

Respectfully submitted,

/s/ *Byron Walker*

BYRON WALKER
REGISTER NO. 46692-004
FCI FORT DIX
P.O. BOX 2000
JOINT BASE MDL, NEW JERSEY 08640

## V.     CERTIFICATE OF SERVICE.

This shall certify that a true and correct copy of this motion has been furnished upon the Office of the United States Attorney for the Southern District of Florid (Aimee JimeneZ, AUSA), at 99 NE 4th Street, Miami, Florida 33132 Street, by mail and facsimile: (305) 530-7976, on this 2nd day of December, 2020.

Dated: December 2, 2020

/s/ *Byron Walker*

BYRON WALKER

# ATTACHMENT A

**Congress of the United States**
**Washington, DC 20515**

November 9, 2020

Mr. Michael Carvajal
Director
Federal Bureau of Prisons
320 First Street N.W.
Washington, DC 20534

Dear Mr. Carvajal,

We write today to express grave concerns regarding the Bureau of Prison's (BOP's) inadequate protocols for COVID-19 testing and transfers of incarcerated individuals. Specifically, we are concerned that BOP recently transferred COVID-19 positive incarcerated individuals to FCI Fort Dix, which is now facing a second, and potentially severe, COVID-19 outbreak. We strongly urge you to extend the recently enacted moratorium on transferring incarcerated individuals to FCI Fort Dix to also cover FCI Fairton, and that you continue the moratorium until BOP contains the new COVID-19 outbreak at the facility and formulates an effective and accurate testing strategy to protect both staff and incarcerated individuals from future outbreaks.

Prior to October, BOP had not reported any recent COVID-19 cases among incarcerated individuals or staff at FCI Fort Dix. However, in early October, BOP reportedly alerted staff at FCI Fort Dix that their facility would begin receiving transfers of incarcerated individuals from FCI Elkton in Ohio. FCI Elkton has been severely affected by COVID-19, with nearly 1,000 known cases among incarcerated individuals and staff to date.[1] Despite the known risks of transferring incarcerated individuals during a pandemic,[2] BOP transferred more than 150 incarcerated individuals from FCI Elkton to FCI Fort Dix in recent weeks. On October 28, 2020, BOP confirmed in an email to congressional staff that 54 incarcerated individuals tested positive for COVID-19 in the 5812 unit of FCI Fort Dix, which is reportedly the unit into which the individuals from FCI Elkton were transferred. On October 29, 2020, BOP confirmed that five incarcerated individuals from FCI Elkton who were transferred to FCI Fort Dix on the evening of October 28, 2020 had rapid-tested positive for COVID-19 upon arrival and were placed in isolation.

While the situation is rapidly evolving, it is clear that BOP does not have an effective plan to ensure COVID-19 positive incarcerated individuals are not transferred between facilities. The outbreak is now spreading within FCI Fort Dix, and as of November 9, 2020, there are at least 228 active COVID-19 cases among incarcerated individuals and ten active COVID-19 cases among staff members.[3] The FCI Fort Dix employees responsible for transporting the FCI Fort Elkton transfers may have been exposed to COVID-19 in transit. All incarcerated individuals and

---

[1] https://www.bop.gov/coronavirus/
[2] https://www.bop.gov/coronavirus/covid19_status.jsp
[3] https://www.bop.gov/coronavirus/

staff at FCI Fort Dix and the surrounding communities are now at increased risk for contracting COVID-19, with potentially deadly consequences.

In light of the rapidly escalating crisis at FCI Fort Dix, we urge you to immediately test all FCI Fort Dix incarcerated individuals and staff for COVID-19. We appreciate that BOP has instituted a temporary moratorium on transfers into FCI Fort Dix until November 23, 2020. However, rather than using an arbitrary date, we urge BOP to halt all transfers to FCI Fort Dix until BOP institutes an effective and accurate testing strategy for incarcerated individuals and staff and there are no active cases at the facility. Given that BOP does not currently have an effective strategy for safely transferring incarcerated individuals, we also request that BOP extend this moratorium to New Jersey's other facility, FCI Fairton.

In regards to an effective COVID-19 testing strategy, we strongly urge you to institute a plan to test all FCI Fort Dix incarcerated individuals and staff on at least a biweekly basis. FCI Fort Dix's employees are frontline federal workers, and it is unacceptable that BOP is not providing them with regular COVID-19 testing. By failing to test FCI Fort Dix's employees, BOP is needlessly endangering not only these employees but their families, all incarcerated individuals, and the entire surrounding community.

Additionally, we request that BOP provide detailed answers to the following questions no later than Friday, November 20, 2020:

1) Will BOP commit to halting all transfers of incarcerated individuals to FCI Fort Dix and FCI Fairton until the current COVID-19 outbreak at the facility has ended and there are no active cases among incarcerated individuals or staff?
2) During the FCI Fort Dix transfer moratorium, will BOP also commit to halting any transfers of incarcerated individuals to FCI Fairton?
3) What is BOP's plan for addressing the current COVID-19 outbreak at FCI Fort Dix, including information on testing, safety protocols, notifications to staff and incarcerated individuals, as well as any future outbreaks at FCI Fort Dix and ensuring the safety of both incarcerated individuals and staff?
4) In an email to congressional staff, BOP indicated that incarcerated individuals who had tested positive for COVID-19 in the previous 90 days and were asymptomatic were not retested before being transferred from FCI Elkton to FCI Fort Dix. Can you verify that all FCI Elkton incarcerated individuals who previously tested positive for COVID-19 received two negative COVID-19 test results before their transfer to FCI Fort Dix? Please describe, in detail, the process for testing the FCI Elkton incarcerated individuals prior to their transfer to FCI Fort Dix.
5) What is BOP's overall, long-term COVID-19 testing strategy for FCI Fort Dix? How will BOP update the COVID-19 testing strategy at FCI Fort Dix in light of the recent outbreak?
6) Will BOP begin providing COVID-19 testing to FCI Fort Dix employees? If so, how often will such testing occur?
7) How has FCI Fort Dix spent the CARES Act (P.L. 116-136) funding that has been allocated the facility? Please provide a detailed breakdown.

Thank you for your prompt consideration of this urgent matter.

Sincerely,

Robert Menendez
United States Senator

Cory A. Booker
United States Senator

Frank Pallone, Jr.
Member of Congress

Bill Pascrell, Jr.
Member of Congress

Albio Sires
Member of Congress

Donald M. Payne, Jr.
Member of Congress

Donald Norcross
Member of Congress

Bonnie Watson Coleman
Member of Congress

Josh Gottheimer
Member of Congress

Mikie Sherrill
Member of Congress

Andy Kim
Member of Congress

Tom Malinowski
Member of Congress

# ATTACHMENT B

```
BP-A0148                INMATE REQUEST TO STAFF CDFRM
JUNE 10
U.S. DEPARTMENT OF JUSTICE                FEDERAL BUREAU OF PRISONS
```

| TO: (Name and Title of Staff Member) DAVID ORTIZ, WARDEN | DATE: 10/29/2020 |
|---|---|
| FROM: BYRON WALKER | REGISTER NO.: 46692-004 |
| WORK ASSIGNMENT: | UNIT: 581n |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

As you know I have HIGH BLOOD PRESSURE which is a COVID RISK FACTOR. GIVEN THE CURRENT CONDITIONS AT THIS FACILITY AND MY CONDITION I AM REQUESTING COMPASSIONATE RELEASE IMMEDIATELY TO SAVE MY LIFE.

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate

PDF                    Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR Prescribed by FOLDER        **SECTION 6**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
400 NORTH MIAMI AVENUE
MIAMI, FLORIDA 33218